UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

CARMEN MENDEZ-HECHTER,

    Plaintiff,

v.

DR. LEONARDO VALENTÍN-GONZALEZ, et al.,

    Defendants.

Civil No. 3:14-cv-01833 (JAF)

**OPINION AND ORDER**

This matter is before the court on the Joint Motion for Partial Summary Judgment Pertaining to the EMTALA Claim filed by Defendants Dr. Leonardo Valentín-González and Professional Hospital (ECF No. 30) and the Motion for Partial Summary Judgment Pertaining to Hereditary Damages filed by Defendant Dr. Leonardo Valentín-González (ECF No. 32). Plaintiff did not oppose to the motion for summary judgment regarding the EMTALA claim, but opposed the second motion pertaining to hereditary damages (ECF No. 37). Additionally, Plaintiff does not oppose Defendant Dr. Valentín's Statement of Uncontested Facts (ECF No. 33). (ECF No. 37 at 9). Defendant Dr. Valentín then replied in support of his motion pertaining to the hereditary damages. (ECF No. 42). The matters are ripe for review.[1]

---

[1] On December 15, 2015, the court granted Plaintiff's motion for leave to file an Amended Complaint. The Amended Complaint does not change any substantive claims against Defendants Dr. Leonardo Valentín-González or Professional Hospital. Accordingly, the court will not require Defendants to refile the motions for partial summary judgment. Additionally, because the Amended Complaint only adds the insurance companies of the remaining defendants, discovery has concluded, and the insurance companies have been aware of the pending suit, no changes to the current litigation schedule will be made as a result of the Amended Complaint.

I.

**Standard of Review**

Summary judgment should be granted when based on materials in the record, the moving party shows "that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must construe the entire record in the light most favorable to the nonmoving party, drawing all reasonable inferences in her favor. *DePoutot v. Raffaelly*, 424 F.3d 112, 117 (1st Cir. 2005). "The failure of the nonmoving party to respond to a summary judgment motion does not in itself justify summary judgment." *López v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir. 1991) (citation omitted). "Rather, before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Id.* (citation omitted) (internal quotation marks omitted).

II.

**Facts**

The following facts are taken from Defendants' unopposed statements of fact (ECF Nos. 31 and 33) and Plaintiff's Amended Complaint (ECF No. 47).

This matter stems from the death of Mrs. Celia López-Charneco ("Mrs. López") on May 25, 2010. While alive, Mrs. López suffered from diabetes and cerebrovascular accident with right side hemiparesis. (ECF No. 47 at ¶12). In April of 2010, upon developing an ulcer on her left leg, Mrs. López consulted with a doctor at Professional Hospital's "sister clinic" in Manatí, where she received a referral to Professional Hospital

in Guaynabo for further evaluation. (ECF No. 47 at ¶13). Mrs. López arrived at Professional Hospital on April 19, 2010, for examination by Defendant Dr. Leonardo Valentín-González. Dr. Valentín determined that due to the state of the ulcer, amputation of Mrs. Lopéz's left leg was required and scheduled surgery for the same day.

After running preliminary blood tests, it was determined that Mrs. López required a blood transfusion before the surgery. To say the least, the transfusion did not go well. Nine hours after the attempted transfusion, Dr. Valentín again examined Mrs. Lopéz and decided to proceed with the amputation of her left leg. She was admitted as an inpatient for surgery at 9:39 a.m. on April 20, 2010. She was released on April 30, 2010.[2] During her hospitalization, her left hand began rotting and showing signs of gangrene. Upon her discharge on April 30, Mrs. Lopéz's hand had turned black. Her discharge did not include a treatment plan for her left hand, merely instructions to return in one week for evaluation of the sutures from her leg amputation. At some point after her discharge, Mrs. Lopéz again went for her follow-up at Professional Hospital's sister clinic in Manatí, via ambulance, where her sutures were removed and she was given pain killers for her gangrenous hand.

On May 6, 2010, Mrs. López again presented at Professional Hospital, where she was admitted at 12:58 a.m. She received treatment, including amputations of various fingers on her left hand, and remained in the hospital until her death on May 25, 2010,

---

[2] The Statement of Uncontested Facts (ECF No. 31) incorrectly states that Mrs. López remained in the hospital until April 30, 2015. Clearly, this is a typographical error.

from a grand mal seizure attributed to sepsis and septic shock associated with the infection in her hand.

Prior to her death, in 2007, Mrs. López executed an open testament (open will under the Puerto Rico Civil Code) naming as heirs her daughters Carmen María Méndez-López and María López-Méndez, and granddaughters Tianna Cynthia Mier-Méndez, Heather Martine Hechter-Méndez, and Anastasia Celia Méndez-Ayala.[3]

Plaintiff in this action is Carmen Méndez-Hechter ("Plaintiff"), daughter of Mrs. López.[4] Plaintiff is a resident of California. Plaintiff filed the instant action on November 18, 2014, against Professional Hospital, Dr. Wilmer Valentín-González, and its medical staff ("Professional Hospital"); Dr. Leonardo I. Valentín-González, Dr. Wilmer Valentín-González, the San Carlos Borromeo Hospital, and its medical staff ("Hospital San Carlos"); Continental Insurance Company, and Unidentified health professionals.[5]

Plaintiff's first cause of action alleges that Professional Hospital violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, by improperly screening Mrs. López when she presented at Professional Hospital. Plaintiff's second cause of action alleges medical and hospital malpractice

---

[3] Defendant Dr. Valentín also mentions a widower, Mr. Méndez, who is also an heir under Puerto Rico law. The court assumes from the complaint that "Mr. Méndez" was Mrs. López's husband.

[4] Presumably, Plaintiff is the same person as the daughter identified by Mrs. López in her open testament as "Carmen María Méndez López." Because it makes no difference in our analysis, we will continue our analysis under this premise.

[5] Plaintiff and Defendant Hospital San Carlos Borromeo thereafter entered into a stipulated dismissal with prejudice. (ECF Nos. 16 and 17). Plaintiff and Defendant Dr. Wilmer Valentín-González also entered into a stipulated dismissal with prejudice. (ECF Nos. 21 and 22). A review of the online docket indicates that Continental Insurance Company of P.R., Inc. has never been served with the Complaint and that the "unidentified health professionals" have neither been served nor identified.

against Professional Hospital, Dr. Leonardo Valentín, Dr. Wilmer Valentín, and the unidentified health professionals for violations of 31 L.P.R.A. §§ 5141 and 5142. In addition to her own damages, Plaintiff seeks compensation on behalf of her deceased mother as her sole heir, for the damages allegedly suffered by her mother prior to her death.

Defendants Dr. Valentín and Professional Hospital moved for summary judgment as to the EMTALA claim arguing that because Mrs. López was admitted into Professional Hospital on both of her visits, they complied with their statutory duties under EMTALA. Defendant Dr. Valentín also moved for partial summary judgment as to Plaintiff's inherited claim for medical and hospital malpractice.

## III.

## **Law And Analysis**

### A. **EMTALA**

To assert a cause of action under EMTALA, a plaintiff must show the following.

> (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

*Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1190 (1st Cir. 1995). Thus, EMTALA imposes two duties on hospital emergency rooms: A duty to screen a patient for an emergency medical condition, and, once an emergency condition is found, a duty to

stabilize the patient before transferring or discharging him. Plaintiff alleges in her Complaint that Defendants violated EMTALA by (1) discharging Mrs. López with an emergency situation that had not been stabilized; and (2) failing to screen Mrs. López in the manner provided to similarly-situated patients. (ECF No. 1 at ¶¶ 74 & 75). Defendants assert that EMTALA does not apply to Plaintiff's claim since Professional Hospital admitted Mrs. López for treatment thereby fulfilling its statutory duties under EMTALA. (ECF No. 30 at 11 (citing 42 CFR § 489.24(a)(ii) and (d)(2)). Plaintiff did not oppose Defendants' motion to dismiss the EMTALA claims.

When a party does not oppose a motion for summary judgment we must still "consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir. 2006) (*quoting Mullen v. St. Paul Fire and Marine Ins. Co.*, 972 F.2d 446, 452 (1st Cir .1992)).

Indeed, there is an inpatient exception to EMTALA's stabilization requirement which reads: "If the hospital admits the individual as an inpatient for further treatment, the hospital's obligation under this section ends, as specified in paragraph (d)(2) of this section." 42 CFR § 489.24(a)(1)(ii). This exception, however, only becomes relevant if the hospital fulfills its medical screening duty to "[p]rovide an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition exists." 42 C.F.R. § 489.24(a)(1)(i).

We turn now to the two instances that Mrs. López presented for treatment at Professional Hospital.

### 1. <u>Failure to Screen</u>

Plaintiff alleges that Professional Hospital failed to screen Mrs. López in the manner provided to similarly-situated patients. The essence of the screening requirement is that a screening procedure exists and the procedure is administered even-handedly. *Correa*, 69 F.3d at 1192. On her first visit, Mrs. Lopéz presented at the hospital in order to receive treatment for the ulcer on her left leg. At that time there was nothing wrong with Mrs. Lopéz's hand. Plaintiff admits that Dr. Valentín examined Mrs. Lopéz on her first visit, and determined a course of action to treat her leg. Mrs. Lopéz was admitted to the hospital for further treatment. A hospital has no EMTALA duty to screen for a condition that may have developed during a patient's hospital stay. *Reynolds v. Maine General Health*, 218 F.3d 78, 82-83 (1st Cir. 2000). When viewing the facts in the light most favorable to Plaintiff, there is simply no evidence that Professional Hospital engaged in disparate screening on April 20, 2010.

On May 6, 2010, Mrs. Lopéz again arrived at Professional Hospital, this time showing signs of gangrene in her left hand and in acute pain. Thereupon, Mrs. Lopéz was admitted to the hospital for treatment of the issue with her left hand. Dr. Valentín ordered wound cultures of her left hand, an infectious disease consultation, and started her on antibiotics. The fact that Mrs. Lopéz was in the hospital receiving treatment is a

"*prima facie* showing that the purpose of [42 U.S.C. § 1395dd(a)] was satisfied." *Id.* at 83.

Although what happened to Mrs. Lopéz after she was admitted to the hospital on both occasions is extremely regrettable, it is a matter to be decided under medical and hospital negligence law, not under EMTALA. *Id.* (After satisfying the screening requirement, "any failures of diagnosis or treatment were then remediable under state medical malpractice law."); *Correa*, 69 F.3d at 1192 ("EMTALA does not create a cause of action for medical malpractice."). The court finds nothing to support Plaintiff's assertion that Professional Hospital failed to screen Mrs. Lopéz. Indeed, Plaintiff herself did not oppose this argument. Accordingly, Plaintiff's claim against Professional Hospital and Dr. Valentín for failing to properly screen Mrs. Lopéz in violation of EMTALA fails as a matter of law.

**2. Failure to Stabilize**

Plaintiff's claim for failure to stabilize Mrs. Lopéz suffers the same fate as the failure to screen claim. First, we can summarily eliminate any possible claim for improper discharge on her second visit as she was never discharged or transferred but, rather, she died at the hospital.

We move, therefore, to her initial discharge on April 30, 2010. Plaintiff had been screened upon her arrival on April 19, 2010, at Professional Hospital and admitted for surgery on April 20, 2010. Mrs. Lopéz's move from the emergency room to surgery was not a transfer within the meaning of the transfer stabilization provision of EMTALA. *See*

*Ceballos-Germosen v. Doctor's Hosp. Ctr. Manati*, 62 F.Supp.3d 224 (D.P.R. 2014). She then remained under the care and treatment of Professional Hospital until her discharge on April 30. Similar to her transfer, Mrs. Lopéz's discharge after ten days of treatment is not a discharge within the meaning of the stabilization provision of EMTALA.

Plaintiff has failed to demonstrate any viable claim against Defendants under EMTALA. Accordingly, Defendants Motion for Partial Summary Judgment (ECF No. 30) is GRANTED; Plaintiff's EMTALA claims are hereby DISMISSED WITH PREJUDICE. This does not, however, leave Plaintiff without viable claims against Defendants, since the state law claims of medical malpractice remain.

**B.     Hereditary Damages**

Plaintiff seeks to recover for damages related to the treatment and death of her mother, Mrs. López, which she attributes to Defendants' negligence under 31 L.P.R.A. §§ 5141 and 5142. (ECF No. 47). In addition to her own damages, Plaintiff seeks compensation on behalf of Mrs. López as her sole heir, for the pain and suffering her mother experienced for the weeks prior to her death. Plaintiff, however, is not the only child of the deceased. Mrs. López has another daughter, María López-Méndez. Moreover, Mrs. López died after executing an open testament (open will under the Puerto Rico Civil Code) naming as heirs her daughters and her granddaughters Tianna Cynthia Mier-Méndez, Heather Martine Hechter-Méndez, and Anastasia Celia Méndez-Ayala. Mrs. López also designated Mr. Frank Cabán-López as the executor of her will, giving him "all the rights and obligations that that entails[.]"

According to Defendant Dr. Valentín, when a survivorship claim arising under Article 1802 does not include all heirs of the estate, dismissal is warranted. (ECF No. 42 (citing *Cruz–Gascot v. HIMA–San Pablo Bayamon*, 728 F.Supp.2d 14, 26 (D.P.R. 2010)).

Plaintiff does not contest that she is not the sole heir of Mrs. López. Instead, Plaintiff asserts that Puerto Rico law does not require all heirs to participate in a lawsuit for inherited pain and suffering (ECF No. 37 (citing *Tropigas de Puerto Rico v. Tribunal Superior*, 2 PR Offic. Trans. 816 (1974); *Arias-Rosado v. González-Tirado*, 111 F.Supp. 2d 96 (D.P.R. 2000); *Ruiz-Hance v. Puerto Rico Aqueduct and Sewer Authority*, 596 F.Supp. 2d 233, 299 (D.P.R. 2009); *Jiménez v. Rodríguez-Pagán*, 597 F.3d 18 (1st Cir. 2010)).

Indeed, there is a split in this district regarding whether all of the heirs are indispensable parties to an inherited claim. *See Cason v. Puerto Rico Elec. Power Authority*, 770 F.3d 971, 975 (1st Cir. 2014). The undersigned has previously taken the position that survivorship actions can be brought on behalf of the estate without joining all heirs as parties. *Muñiz–Mercado v. Hosp. Buen Samaritano*, No. 09–1829, 2010 WL 4237923 at *1 (D.P.R. Oct. 26, 2010). We do not, however, see the need to engage in the indispensable party analysis here.

Prior to her death, Mrs. López designated Mr. Cabán as her executor, giving him authority over all of her rights and obligations. It is well-established law that when dealing with a valid will, the intention of the testator shall govern. *See Inglis v. Trustees of Sailors Snug Harbor*, 28 U.S. 99, 99 (1830). Here, Mrs. López clearly intended for

Mr. Cabán to have the authority to pursue the estate's inherited rights upon her death. Mr. Cabán has not brought any claim before the court on behalf of the estate. We do not make a determination as to indispensable party analysis, nor is our intent to establish any precedent. Instead, this is a *sui generis* order, in that we decline to exercise jurisdiction under the specific circumstances surrounding Mrs. López's will, including the appointment of a general executor who has made no appearance here.

Accordingly, the inherited claim is dismissed without prejudice. Defendant's Motion for Summary Judgment pertaining to the inherited damages portion of Plaintiff's Complaint is GRANTED, but for reasons other than those set forth in the motion.

## IV.

## Conclusion

For the reasons set forth above, Plaintiff's EMTALA claim is dismissed with prejudice. Plaintiff's inherited claim for medical and hospital negligence is dismissed without prejudice. Plaintiff's personal claim for her own damages remains pending before the court on account of diversity of citizenship if the jurisdictional amount is indeed met 28 U.S.C. § 1332.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 17th day of December, 2015.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE